(27 Misc. Rep. 392.)

### ALVORD v. CITY OF SYRACUSE et al.

(Supreme Court, Special Term, Onondaga County. May, 1899.)

1. MUNICIPAL CORPORATIONS—ASSESSMENTS FOR LOCAL IMPROVEMENTS—DUTY OF ASSESSORS.

It was improper for assessors to follow the unauthorized directions of the city council, in apportioning the amount of an assessment for a local improvement on the property subject thereto.

2. SAME—CORRECTION OF ERRORS.

Error of assessors in following the directions of a city council in apportioning the amount of an assessment may be corrected by certiorari; and hence no relief would be granted, as provided by its charter, in an action to determine the legality of the assessment.

Action by Anson E. Alvord against the city of Syracuse and others to set aside an assessment made for opening South State street, in said city, and to enjoin the collection thereof. Judgment for defendants.

William Nottingham, for plaintiff.

J. E. Newell, for defendants.

HISCOCK, J. Proceedings were instituted by the city of Syracuse in 1896 for opening State street between certain points. This involved certain expenses or damages, which under the charter were to be assessed as a local improvement upon neighboring property. The assessors made such assessment, and thereafter the various notices provided by the charter were given of the completion of the assessment rolls, and of an opportunity to examine the same and file objections, etc. Objections were filed, and, as provided by the charter, an appeal was taken from the assessment, as made, to the com-

mon council, which on or about November 15, 1897, adopted a reso-
lution sustaining the appeal, and returning said assessment roll to
the city assessors, who were "authorized and directed to reassess said
assessment." The assessors did not proceed to make a new assess-
ment, and on or about December 20, 1897, the council adopted the
following resolution:

"Whereas, local assessment roll No. 275, for the extension and opening of
Mulberry street (now State street), was on the 15th day of November, 1897,
referred back to the board of assessors to make a new assessment; and
whereas, the assessors have made no new assessment, but requested instruction
from the common council with reference thereto; and whereas, in the judg-
ment of the common council, the assessment made upon the property situated
on said street, east of the railroad bridge, or East Brighton avenue, is largely
excessive, and not according to the benefits received by the property owners, and
is unjust and inequitable, under section 171 of the charter, and that a reduction
should be made in the amount assessed on said property east of Brighton ave-
nue:  Now, therefore, resolved, that the said assessors be, and they are hereby,
directed to reassess said property, east of said railroad bridge, at a sum in the
aggregate not to exceed two thousand dollars ($2,000)."

This resolution did not secure the desired action by the assessors,
and upon December 28, 1897, another resolution was adopted by the
council, reading as follows:

"Whereas, local assessment roll No. 275, for the opening of Mulberry street
(now South State street), was on the 15th day of November, 1897, referred back
to the board of assessors to make a new assessment; and whereas, the common
council, by resolution duly adopted on the 20th day of December, 1897, directed
the assessors to reassess the property on said assessment roll, east of the rail-
road bridge on East Brighton avenue, at a sum in the aggregate not exceeding
two thousand dollars ($2,000):  Therefore, resolved, that the city assessors be,
and they are hereby, directed to reassess the balance of the award of said dam-
ages upon the property lying west and north of said railroad bridge."

Thereupon the assessors did proceed to carry out the instructions
of the council and make a new assessment as directed in said resolu-
tion.  The roll was completed, various notices provided as to the
assessment given, and objections thereto made, which, with the as-
sessment rolls, were transmitted and referred to the common council,
which overruled the objections, and confirmed the assessment as
made, by resolution passed March 28, 1898.  Thereafter, the various
intermediate steps provided by the charter having been taken, the
assessment went into effect; and a resolution was adopted by the
council April 18, 1898, providing, in substance, for the collection
thereof.  Plaintiff does not appear to have made any objections to
either assessment.  He took no proceedings by certiorari to have
the same corrected or set aside, and on or about May 10, 1898, com-
menced this action.

Complaint is made of the proceedings leading up to the last assess-
ment, and the one involved in this action.  The main complaint is
that in such last assessment the apportionment of the damages
was not made by the assessors in any legal or proper manner, but
that they simply carried into effect the instructions of the common
council, which, in the first place, had no authority to give such in-
structions, and which, in the second place, seems to have acted upon
some arbitrary and undisclosed plan of apportionment.  I regard this
complaint as well founded.  When the first assessment roll and the

objections thereto came before the council, it had the power to "confirm the roll or annul it, or refer it back to the assessors to make a new assessment." It did not have the power, under any provision of the charter which has been called to my attention, to take the place of the assessors and make a new assessment. This was practically what it essayed to do. The assessors had no right to accept and obey the action of the council, to this extent, if the latter attempted to impose it upon them. It was their duty, under the familiar principles applicable to such assessments, to exercise and work out their own judgment in such manner as should be just, and correct any errors in their first assessment. · They seem to have followed the former instead of the latter course. The result is that the assessment in question has, in effect, been made by the council, who had no right to make it, rather than by the assessors, whose duty it was to make it.

The plaintiff, however, cannot recover in this action. The errors complained of could have been remedied under a writ⁵ of certiorari, as the scope of that writ is established under the general principles of law and procedure, and especially under the provisions of section 145 of the charter. This being so, his case seems to come clearly within those other provisions of said section which provide that:

"An action may be brought in any court having jurisdiction thereof to determine the legality of an assessment for local improvements. * * * Such action shall be brought prior to the completion of the work * * * and no relief shall be granted the plaintiff or plaintiffs based upon any defects,. illegalities, irregularities or errors in said assessment-roll, or the proceedings upon which it is based, which could have been reviewed and corrected by a writ of certiorari, issued pursuant to the provisions of this section.".

Judgment is therefore ordered for the defendants, with costs.
Judgment for defendants, with costs.